Good morning. May it please the Court, Tamar Pachter for the people of the State of California. With me at Council table is my colleague, Deputy Attorney General Paul Stein. The Attorney General brought this case to stop an ongoing antitrust violation, which continues to harm the people of the State of California, its ratepayers, and its economy as a whole. The Attorney General charges that Mirant acquired and continues to hold market power in violation of Section 7 of the Clayton Act, and that it uses that power to manipulate California's energy markets. When the District Court stayed this case, it blocked the Attorney General from pursuing an injunction that would have put a stop to this ongoing harm. Can you get any relief on antitrust principles in the Bankruptcy Court of Texas? Your Honor, the State could presumably file an adversary proceeding in the Bankruptcy Court or an action in the District Court in the Northern District of Texas. You could withdraw a move to withdraw from the Bankruptcy Court? Move to withdraw the reference and have it heard in the Bankruptcy Court. Where would it go to? Would it go to the District Court in Texas, or could you move it back to Judge Walker's court? I believe, Your Honor, that the statute doesn't provide for transfer, but certainly the State would stipulate to transfer back to our home forum here in the Northern District. It's thought out Texas would be gleeful to have it come back to California. But, no, quite seriously, are you totally without power through the bankruptcy proceeding to get the relief, interim or otherwise, that you say you've been deprived of at the Chapter 11 and in this case? No, Your Honor, we are not. However, the Supreme Court has frequently alluded to the limited power of the Bankruptcy Court to determine debtor-creditor rights and that the District Courts are to determine law enforcement actions such as this. Right. But that's why there's the mandatory withdrawal. That's true. Presumably, or at least arguably, fit within that category. That's true, Your Honor. But 362b-4 gives us the right to be brought it before the bankruptcy was filed in the Northern District of California, and it allows us to proceed there. For instance. Have you gone to – I think I know the answer to this, but I want to make sure I've got it. Have you gone to the Texas Bankruptcy Court and sought relief from the automatic stay with respect to this case? I know that that's happened with respect to several appeals. How about this one? Your Honor, the State of California has never gone to the Bankruptcy Court to request relief from the automatic stay. Merent requested limited relief from the automatic stay on several other cases that were pending before this Court. But you have not gone to the – and why not? Because it's our position that under the law surrounding 362b-4, that's not our obligation, that this is clearly a police and regulatory action. I understand that. Now, when Merent went and got relief from the automatic stay, the bankruptcy judge, at least as I read the order, wasn't sure that it was even covered by the automatic stay, and said, I don't even reach that question, but to the extent necessary and appropriate, here's your relief. That's right. What's the harm if you're going down there to the bankruptcy judge and say, you know, our argument, frankly, is that we're not covered, but we'd like a little belt and suspenders here because it would certainly make our argument easier in front of Judge Vaughn Walker if we were to be able to say, listen, the bankruptcy judge says this is not subject to the automatic stay and we want to go forward. Certainly, Your Honor, the State of California could have done that as an alternative to making the motion that it did through the district court. I'm trying to figure out why you didn't. Your Honor, I can't explain why that strategic decision was made. Clearly, we could have made that motion in either forum. It was more convenient for us to make it here in the district court. Well, how does this all affect our jurisdiction, then? Because this is an issue of whether there's a final order that we're looking at, and the answer is far from clear. But assuming that there's still avenue, one of the grounds that you assert is that you're effectively out of court, as I understand it, and that's why it's in the nature where it satisfies the final order jurisdiction, that essentially if you don't get to proceed in Judge Walker's courtroom, Myron's going to have its assets sold off by a bankruptcy court in Texas. He'll never get an adjudication of your Clayton 7 action. You may not be able to get interim relief, and yet, therefore, you're effectively out of court. You look puzzled. Am I misstating your argument so far? No, Your Honor. There's several grounds on which we've asserted the appellate jurisdiction. I know there are, but at least on that ground. Yes. At least on the out-of-court ground. So the question is, it's sort of in the nature of an exhaustion argument, I guess. There are at least two potential avenues of relief. One is to go down secretly from the automatic stay, and the other is to seek to get the case withdrawn so that the antitrust issue is trying to be a complex antitrust issue isn't being litigated in the bankruptcy court. And yet, you say, well, we prefer to do it the other way. Why shouldn't, in terms of the out-of-court analysis, your other options not exercise factor into our jurisdictional question? I think there are a couple of reasons for that at this point, Your Honor. The district court here in the Northern District of California has now entered a stay that is irrespective of 362 before. So conceivably, we could go to the bankruptcy court now and request relief from the automatic stay. It would have no effect on the stay here in the district court. Why would it have no effect? That is to say, as I read Judge Walker's order, he is saying, I'm not sure about this, I'm not sure about that, this being Grunson, that being the regulatory exemption. If you have an order from the bankruptcy judge saying whatever the automatic stay did or does doesn't apply now, that removes both of those uncertainties for Judge Walker. Then you go back and you say, okay, let's go ahead. It's not clear that it removes both of those uncertainties for Judge Walker the way I understand it, Your Honor, because what if we went to the bankruptcy court, automatic stay applied to him. That's one of the reasons that he entered the stay. That's correct. That he didn't want to decide that issue and he questioned whether he had jurisdiction to decide that issue. But the stay was also entered on alternative grounds that the bankruptcy would moot the That ground would remain. But you would have changed the calculation in front of Judge Walker by removing those two uncertainties. That is true, Your Honor. That would certainly take away some of the basis for his decision for entering the discretionary stay. Has the posture of the case such that because of the stay, you are no longer able to exercise those options? Or you think it would be futile? And if yes as to either, could you explain why? The stay does not prevent us from doing anything, as I understand it, other than prosecuting the suit in the Northern District of California. Certainly the argument could be made, Merritt might make the argument to the bankruptcy court that, look, the district court thinks this ought to be stayed. There's no reason for you to act at all. And that's an argument that we might face down there. There are no guarantees for us, I don't think, in the Northern District of Texas. And what we do have clearly as a statutory matter is a right to proceed in the Northern District of California. As a police regulatory action. As a police and regulatory action. And what the stay does is it allows Merritt to continue indefinitely to hold an office, to exercise its market power, and it essentially exempts Merritt from law enforcement with respect to the Clayton Act during the pendency of its bankruptcy. That's the problem I have with that aspect of your argument. You say it's exempt. But if there is antitrust jurisdiction, either in the bankruptcy court or by with a mandatory withdrawal, it's not clear to me. You may be right. I just don't know. That's why I'm posing it more as a question, really. Why can't you seek your antitrust relief in an alternate form so that you really aren't precluded from doing it? You just can't do it through Judge Walker. We can't do it through Judge Walker. But I think you're right. The State of California could file an action in the Northern District of Texas and obtain that relief. Let me ask you ñ no, I'm sorry. Let me go forward with the argument. This question may come up later. Sorry. Merritt has been in bankruptcy now for more than a year, and given no indication that it intends to transfer or otherwise sell the assets that it holds in California, Merritt has never even stated an intention to sell those plants. Has a plan been filed? Pardon me? Has some kind of a plan been filed or some indication of where in terms of the movements? No, Your Honor. It's been more than a year. No, there is no proposed plan of reorganization. Merritt has not even submitted a business plan that's open to anyone except the creditor committees in the bankruptcy. The say has to be lifted now to allow the Attorney General to continue to pursue the injunction that will put an end to Merritt's exercise of market power here in California. The district court abused its discretion in three ways. It took it as a given that Merritt would quickly divest itself of these plants. It applied the wrong legal standard in putting a stay in place. And it completely ignored the congressional policy that's embodied in 11 U.S.C. 362b4. It had to do that in order to get to a stay. Is the 362b4 question, as you say, the exemption from the stay because of the regulatory character, is that something that we can decide here with the case in its current posture? Absolutely, Your Honor. You've reached my next point. Even though Judge Walker did not reach and did not decide that question? He did not reach it and he did not decide it. However, the circumstances of this case meet all the criteria that this Court has used to decide a question that was presented to but not decided by the district court. There's no factual issues that would need to be developed on that? There are absolutely no factual issues, Your Honor. And to the extent that there were any, if Merritt would argue that there were any, the State would argue that those have been waived. It had several opportunities to argue that to the district court, and as a strategic matter, decided never to argue that this case was not a 362b4 action. So it's a pure question of law. This Court decides de novo. The question, if remanded to the district court, would be subject to an immediate interlocutory appeal, just like this one. It would – basically, we would be doing this all over again. And finally, as you said – We know the answer. We should give it to you now? Absolutely, Your Honor. What if we don't know the answer? I think you do know the answer. I think it's very clear, Your Honor. I think under this Court's decision in Gruntz, it's clear that this is a 362b4 action that's exempted from the automatic stay. Gruntz tells us that? I think it does. It does. Okay. Gruntz tells us that Congress said what it meant and meant what it said when it enacted 362b4. But I just read it this morning, and it doesn't say very much. Well, it does at the end, Your Honor. It says that when the State is enforcing, in that case, a criminal law, and in this case, a civil law enforcement action, that that is exempt from the automatic stay. Even under the standard that the district court applied under Landis, which is an easier standard to meet than the Section 105 standard that, for instance, the district court had to use to say this action, the evidence was not presented and the standard was not met. The interesting thing about Landis is that even under the terms of that case and CMAX and Filtrol, which are the cases in which this Court interpreted Landis, it should be difficult to get a stay. The plaintiff's right to move ahead with their case and have it adjudicated has to be overcome by a clear showing by the defendant that there is some prejudice that it's going to suffer if it has to move forward with the case. In this case, Merritt presented none of that evidence, none at all. Not a single declaration was presented. The only argument that Merritt made was that it might possibly someday transfer the plans that held in California. It made no commitment to the district court that it was going to do that or even that it was thinking about that. So there was nothing on which to base this stay. You may want to save some of your time. I will do that, Your Honor. Thank you very much. Good morning, Your Honors. May it please the Court. Robert B. Pringle appearing on behalf of the Appellees. The threshold issue before the Court, of course, is whether the Court has jurisdiction over this interlocutory appeal. I believe that the controlling law of this circuit would show that at least under 1291, there is no jurisdiction, appellate jurisdiction, over this interlocutory order by the district court. Thus, there remains, however, whether the Court would want to consider this under the Writs Act, considering it as a writ of mandamus. And were the Court to do that, I would indicate that the controlling law of this circuit, as set forth in a number of cases, not the least of which is the DeGeorge case, which we've cited, 219 F3, 930, says that the burden on the Attorney General is to show a clear and indisputable right to a writ before it should issue. With that preface. Before you jump over to the writ, I mean, why don't you think we have 1291 jurisdiction under effective dismissal order out of court? I'd be happy to address that, Your Honor. I'm not sure it's not in length. We haven't read that. No, but I think we weren't in denial. There's no denial, as the cases have found. The typical case where you find a writ here would be where you state a federal court and you let a state court determine the controlling issue of law. Well, that might happen here, wouldn't it? I mean, the bankruptcy court in this case. Not an issue of law here. Actually, what would happen here if, in fact, in the reorganization, if there was a disposition of these assets, it would not be a loss of a day in a court to the Attorney General. It would be a win for the Attorney General. Well, not really. Not really, because here's my question. Let me just answer this, if you will. Their claim is that Myrant put this deal together in violation of the antitrust laws, created unlawful market power. Now, it goes down to the bankruptcy court down there, and they dispose of the assets, and the disposition of the assets goes to another holder who gets all of the assets, which, if I understand well-developed, certainly in my mind, as to what the market structure is. But then the new owner has that 44% market share. Okay, so instead of having Myrant as the antitrust violator, now in the state's view they have the new owner as the actual or potential antitrust violator. So now they have to start from scratch. Well, it would certainly move the case against Myrant, and there would be no claim against Myrant. And, as we well know, as the Attorney General has admitted to the panel, it is appearing in the bankruptcy court. It has entered an appearance and is participating in the bankruptcy court. The bankruptcy court, and we have cited to the law in our brief, must necessarily consider antitrust issues in disposition of assets. But it must also act to maximize benefit to the creditors. But not in violation of law, Your Honor. Well, I understand that. But it's going to have in front of it all the creditor committees. Is it going to have a full-fledged Clayton Act trial to determine what the boundaries are? I mean, I'm not sure this is going to show up in front of the bankruptcy court. Can I finish? I'm sorry. I didn't mean to interrupt you. I'm not sure it's going to show up in front of the bankruptcy court in quite the same posture as it would show up in front of a district court up here or even in front of a district court in Texas if the reference were withdrawn. If it's only in the bankruptcy court as to whether or not he's going to approve the plan, that's a very different proposition. I agree with Your Honor in that regard. That's true. However, I think that the panel is quite correct that the Attorney General is not without a remedy here. If, in fact, they wanted to proceed, they could go and remove, seek relief in the bankruptcy court and in Texas pursue their claim there if. But I think the upshot of Judge Fletcher's question is will they get the same remedy? Will there be other considerations that are going to have to be considered by the bankruptcy court in Texas or the district court if the reference is withdrawn because they have other considerations apart from the Clayton Act which have to be factored into their decision-making? I still think that the bankruptcy court will be burdened with adhering to law under the Clayton Act and will not be able to dispose of those assets if, in fact, he would be able to. It would be a risk to NICADA determination if it makes a disposition and says over objection of the Attorney General that the new acquirer would not be in violation of the antitrust law, not in violation of Clayton 7. Would that not only free up Myra, but then be a risk to NICADA in preventing any enforcement action by the State of California? I'll be candid with Your Honor and say I haven't fully considered that. And if I was giving you an answer to that, wouldn't that be? I mean, they almost have to make that determination. Wouldn't the bankruptcy court have to determine that the sale would not violate the antitrust law? They would necessarily have to consider that.  They would have to consider that as a matter of law. And to be sure, if the Attorney General was concerned about that, would rather not have it decided in that forum, it could remove, get, go seek relief from the bankruptcy court and do, as I think the panel had indicated, commence an action in Texas. But why should it have to go through all of that when there's a statute that provides and the statute provides in a regulatory action that they're exempt, that that's? Well, I don't necessarily agree with that postulate, Your Honor. I understand you don't agree with it. But if, in fact, we were to reach why shouldn't we reach that issue then and decide that issue, because why should they have to go, the State have to go through all these machinations in a distant State when, in fact, it filed a legitimate action here, it was your client's action to move everything down to Texas and file the Chapter 11? Why should the State, in the face of, as they argue, the regulatory exemption from the automatic State have to go through these machinations if, in fact, as a matter of law, it is an exempt regulatory action? Well, it would not necessarily have to, but the issue of the Court's discretion in awaiting the anticipated potential disposition of those assets still would be an issue separately. Yeah, but I mean, you've just said there are all sorts of uncertainties. You don't know whether the disposition would be res judicata or not. That's against the future enforcement action. And you have said it would be moved. It would move out Myron's obligations. Correct. So that's the very kind of thing that seems to me a regulatory exemption, the exception that's designed to avoid. Well, the Court never reached that, and it's not up presently before the Court. Well, I don't know that it's not presently before the Court because you all, the The Court didn't find it necessary to reach that. That doesn't mean it happens all the time that a district court will not reach a question and we reach it. Do you have any other ground besides the fact that the district court didn't reach it that we should not? Well, I think that as a general matter, I think that it would be proper for the district court to consider this in light of the facts and to be sure we could bring facts to the attention of the Court. What facts? Because we did argue the issue or discuss the issue with the Court, but the status of the reorganization, Your Honor, and where it was going. But I think that's maybe we're talking apples and oranges here. I'm talking about whether or not the regulatory exemption applies. And I'm trying to figure out are there any facts that I need to know. It seems to me that I just look at the Clayton Act and I ask is that a regulatory Does that fall under the regulatory exemption when brought by the state rather than by the federal government? That's the key question, isn't it? Or perhaps even look at the complaint. I mean, the complaint tells you what relief is requested, and that's certainly coupled with the Clayton Act. It should be sufficient to tell us whether or not it falls within the exemption or not, would it not? It hasn't been fully briefed. You didn't have the record below. It is a matter essentially of law, but law and fact. And it was not addressed by the district court, and it would be fully briefed before the district court and considered. Why in the district court did Myron not brief the issue? We dealt with the issue as to the automatic stay, and we, however, felt that there was little question that this case will have a strong likelihood of being completely mooted. And, therefore, there was no need to even address that issue because it would still, that issue would still exist independent of whether there was an exception here to the automatic stay. Okay. But you weren't precluded by any of the court, the district court's orders from briefing. That was your... No, Your Honor. We were not. We were not. All right. So the issue still remains, though, whether there is jurisdiction here and on this whether there is a clear showing of an entitlement here. As we have noted, there is not the denial of access to a remedy. And Judge Walker also, I should say, had invited the parties to come back to the court if there was unnecessary delay and make reports to the court. The State can go back if there is unnecessary delay and say to Judge Walker that the plan of reorganization is not forthcoming. Delay looks to be X months. We would like, Your Honor, to reopen and lift the stay because the benefits will not be derived here and they are free to do so. So they are not without extensive remedies to solve their complaint of problem here that they seek as an interlocutory matter. And I would suggest to the court that the court should not interpose its judgment for that of the district court in looking at the harm and the benefits of staying pending this reorganization. And, by the way, I should state for the record, it's not until the end of the reorganization. It is until such time as the bankruptcy court considers the disposition of these specific assets, not the... I believe that appears in the decision of the court. And that's the plan, Your Honor. When would the consideration of the disposition of the assets arise in the Texas bankruptcy? There is nothing in the record evidence before the court on that. Indeed, the only statement you have is the statement from the Attorney General, which is argument. It's not anything in the record. The record is devoid of that. You just described the stay being lifted when such and such happens. Are you getting that out of Judge Walker's order? It was the judge's direction to us in open court. I don't know if it's in the record evidence before the court. I didn't remember reading it. It was the judge's direction that we should. I believe in the order he says that we should report back periodically to the court on the status of the bankruptcy, and he made clear that he was going to consider that and would be welcome to any additional motions in light of how that proceeds. So having said that, I don't believe that there is any jurisdiction here but for a writ of mandamus, and the standard under the writ of mandamus in the George case, as I've said, is there has to be a clear and indisputable right to the writ. And here I would respectfully suggest to the panel that it's not wise to interpose the judgment of the panel ex post with the district court having been fully aware of the status of his calendar. But that may be. Michael, I understand our role in that. As I say, what troubles me looking at this case is that the district court relied on the fact that this case may become moot. And there's a serious antitrust issue here that California clearly has a strong interest in testing and reaching. And there are two basic, two problems with this case. One is that if they shouldn't have been subjected to the automatic stay, but had the right to come in and stay and keep this action going, then Judge Walker, who declined to reach that issue, did not really exercise his discretion fully. Number two, to the extent it's mooted as demirant, but doesn't protect California in its Clayton Act case, and indeed there may be some risk of adverse consequences if the Texas court rule, bankruptcy court approves this plan, sells off to another potential antitrust violator. And I realize that's hypothetical, but still, that sort of goes to the mootness issue, which on its face seems appealing when you're managing a very complicated docket and you've got a complicated case. It seems fraught with a lot of gifts and uncertainties. That's where I'm having some trouble with it. Judge Fisher, the district court indicated in its opinion that given the docket and the timing that this case would not be unduly delayed in light of the bankruptcy proceedings and awaiting to see the disposition of those assets. Now, what do you mean by disposition of those assets? Are we likely to get disposition of the assets within the meaning that Judge Walker seems to have had in his head prior to the approval of the plan? No, it will be part of a plan, yes. Yes. That's correct. So this may be a while. It may not be a while. I don't know that I'm free to. It's not the record evidence before the Court. I will say this, that the effort is to put a plan in this fall. I have made inquiries on that. I represent to the Court that's what I stated, but it's not in the record evidence before the Court. Okay. And I might also say, Justice, at one point, that there was no evidentiary showing as to harm by the State either other than the arguable delay. But there wasn't any showing as to harm as to my review. The cost of litigation. The cost of litigation was shown as harm. That's correct. Well, and if the Attorney General is right in his Clayton Act claim, there's ongoing harm because there's an antitrust violation and market power used wrongly. That assumes that he's right on his claim, which I don't know. Well, that would be true in any case, I believe, Your Honor. Everyone who would assert a claim would say that if we were correct, then there would be harm during the period. Every case where you can make that argument and it would have to be taken as the gospel. But isn't there a difference here? I mean, the fact that injunctive relief is all that is being sought, presumably there is an injury, an ongoing injury, which is alleged, which they want to put a stop to. If this were a case just for damages, I think the cases talk about the loss of interest not being a significant concern. But I think what Judge Fletcher is referring to is the interest of the people of California to a competitive market in wholesale energy. Actually, they did make a claim for damages. But that was not, by the time it got to the point where the court was deciding the stay issue, that had been removed from the case. That is correct, Your Honor. And with regard to that, I don't think, the judge made clear that he did not think that this interstitial period during the stay awaiting to see what might happen would in any way provoke greater delay than in the ordinary course of handling the docket in this matter. So he saw no harm in that regard. He made that finding? He made that statement in his opinion, yes, Your Honor. Can you point me to that? I can, Your Honor, if I may. It's in his analysis of the harm. Okay. I've got it in front of me. I do not have that before me immediately. It's in the back of his opinion. He analyzes the three alleged harms, putative harms raised by the Attorney General. And you're saying that he says what in here? In there, Judge Walker indicated that given the docket and the time that this case would ultimately go to trial, that the interposed delay with regard to the bankruptcy reorganization would not in any way harm the State. Well, he says that Page 9, which is referring to as unlikely that the action in this case would reach judgment before the reorganization of defendants and bankers. That's correct, Your Honor. But that assumes that the decision in bankruptcy court will move and therefore they will not need to come, will move the issue and they will therefore not have to come back and submit themselves to the crowded docket at that point in time. It indicates that they will have had the benefit of a reorganization decision as to those assets within that period. Now, the relief that the State is seeking is divestiture. Is that correct? That's correct. They're seeking divestiture. So in that posture, then, Judge Walker says, well, look, you're going to get your remedy potentially through bankruptcy. Without even having to prove a Clayton violation. Right. You don't sell it off. And then the State's response, as I recall, is that, but we don't know that that cures the anti-cost violation. But I don't know, well, they can find out what they think they're going to get out of it. And our point was, Your Honor, that you could raise that in the bankruptcy court as to if there's any cavil about to whom that's transferred and whether that would confer as a package economic power on someone else. And how long do you estimate a Clayton Section 7 trial would take in Judge Walker's case? The actual trial, Your Honor, or weeks, I would say. Weeks? Four weeks, maybe. Four weeks. There's very detailed market information that would come into play in this because you will have to be, in essence, engaging in a simulation and determination of where that market power was exercised in a very narrowly defined market that the State has placed into issue here. So it's a fairly complicated question, then. A very complicated question. And you're saying that the bankruptcy court would have to determine that very same complicated question? And would it set aside four weeks to decide that? Not at all. I don't think the bankruptcy court would have to engage in that level of analysis. Why not? Because I think you just told me that they've got to consider the antitrust considerations. So if they're going to sell off these assets as a lump. Well, that remains to be seen. If, in fact, they sold them off as a lump and the State wished to raise that, they could raise it in the bankruptcy court or they could raise it next post in another. But you've told me that if they are going to sell it off in a lump, it requires a four-week trial to figure out whether that complies with the bankruptcy. I don't know that the best. As I said earlier, I believe in response to a question, I do not necessarily believe that the bankruptcy court would engage in the same level of analysis. I don't think it would. No, it don't do either, Your Honor. Okay. Thank you. Thank you, Your Honor. Thank you. You've got a little time for rebuttal. Could you address the issue of what remedy other than simple divestiture you want or you think is coming out of Judge Walker's proceeding, assuming it's reactivated? Yes, Your Honor. We haven't even had an opportunity to take discovery in this case as a result of the stay. But if you look at the complaint, the Attorney General didn't just ask that the plants be sold off. The Attorney General asked that the plants be divested in a way that market power would not be exercised in California's energy markets. In addition, the prayer for relief requests injunctive relief that would require Merit to inform the State if it ever intended to purchase assets in California's energy markets ever again. That would run to anyone who was in concert with Merit here in the market. In addition, if Merit ever did try to reenter the market, we would have an adjudication that Merit had already violated the Clayton Act if we prevailed on our case, and we could use that in further enforcement action. The case is just mooted. The case is just mooted. And the State of California is left with nothing. But actually, I'm not sure that it's a complete mooting. It may be that you lose the opportunity to get those things, but it's not mooted in the sense that if you get divestiture in the bankruptcy proceeding in Texas, that you're going to get everything out of that that you're seeking out of Judge Walker. So it's not quite mooted. It may get dismissed, but you didn't get everything you're asking for. No. I don't think we would get everything we were asking for in the bankruptcy. Certainly not. But then if it's not moot, you could reactivate the case before Judge Walker and get that collateral. But those plants would be gone, Your Honor, and they might be gone in a way where as you indicated earlier, somebody else would acquire the 44 percent interest. Well, that's a separate question. But as to the prohibitory injunction, yes, we could probably still go back before Judge Walker for that prohibitory injunction. But at that point, it may or may not be worth it. The case may look different. The feel of the case is going to be quite different. Exactly. And we don't know how long that's going to take at this point. And in the meantime, we're not taking discovery. Who knows what's going to happen to the officers and directors that worked for Merent at the time these plants were acquired during the course of the bankruptcy. So we're going to encounter all kinds of problems by the time we get around to getting back to the district court, if indeed we do get back to the district court. What Landis tells us clearly is the burden is not on the plaintiff to go back to the district court. The burden is on the defendant to get a stay. That the stay is immoderate if it's indefinite. And that the burden is on the defendant to get a stay, and if another stay is needed to get another stay. So I don't think Merent can prevail on that basis. Merent has never reported, to my knowledge, on the status of the bankruptcy to the district court. So the district court is not looking for regular reports on the status of the bankruptcy to determine whether it's hard to lift the stay. Does the order say Merent is supposed to report, or the parties? I believe it's at 138 of your excerpts of record. The question is, if they haven't and they're in violation of the order, the state isn't powerless to compel them to report, right? No, Your Honor. But you're right. The state could go to Judge Walker and say you requested regular updates on the bankruptcy and they haven't been reporting regularly. But, again, that seems to be in the nature of the kind of burden that Landis says we shouldn't have to bear in this situation. Well, I don't think that's true. I mean, if it's a proper order under Landis and you have a complaint, however, that they're not living up to it, then it seems to me the failure to comply with an order doesn't invalidate the order. The question is whether the order should have been entered in the first place. If it was properly entered, you might still have a complaint that they aren't living up to it. And then the Landis balancing might have to be reevaluated. I see your point, Your Honor, and I think you're right about that. I think to the extent that what Merent is arguing is that we should be taking steps with the bankruptcy court, with the district court, excuse me, to get relief from an indefinite stay, that that's not permitted under Landis. Okay. Your Honor, I think that's all I have. Thank you very much. Thanks, both sides, for a complicated case, and well argued on both sides. Thank you both very much. The case of Lockyer v. Merent is now submitted for decision, and we will be in adjournment for the day. We will resume in a slightly different configuration tomorrow morning. Thank you, Your Honor. Pringle, it's been a while. Good to see you again. Good to see you again. Good to see you again. Good to see you again. Good to see you again. Good to see you again.
judges: W. Fletcher, Fisher, Winmill